IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ERNESTINE R. WILLIAMS, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF SKYLAR WILLIAMS | Case No. 1:21-cv-00572 |
| | Judge Dan Aaron Polster |
| Plaintiff, | OPINION & ORDER |
| v. | |
| CLERAC, LLC d/b/a ENTERPRISE RENT-A-CAR, ET AL. | |
| Defendants. | |

Before the Court is the defendants' motion for summary judgment. This case arises from a young man's off-duty, criminal conduct in February 2019, when he kidnapped and killed his estranged girlfriend, who was the mother of his child. The plaintiff is the deceased woman's mother and administrator of her estate. The plaintiff asserts claims of negligence, vicarious liability, and wrongful death against the defendant companies that employed the young man at the time of the incident. The defendants maintain that their employee's crimes occurred outside the scope of his employment, and they bear no legal responsibility for them. The death of the young mother in this case was a tragedy, but the plaintiff has not presented facts from which a reasonable jury could impose liability on the defendants. For the following reasons, the defendants' motion for summary judgment is GRANTED.

Background

The plaintiff, Ernestine R. Williams, is the mother of the deceased young woman, Skylar Williams (Ms. Williams). ECF Doc. 20, p. 2. The plaintiff brought this action against the

1

defendant employers, Clerac, LLC; EAN Holdings, LLC; Enterprise Holdings; and John Doe(s). ECF Doc. 20, pp. 2-3. Clerac, LLC does business as Enterprise Rent-A-Car ("Enterprise"). *Id.*

During June 2017 to February 2019, Enterprise employed Ty'Rell Pounds ("Pounds"), as a part-time, service agent at its Mansfield, Ohio branch. ECF Docs. 26, p. 3; 28, Ex. 25, p. 2. Pounds was also a student at North Central State College Police Academy and worked as a security guard. ECF Doc. 26, Ex. B, pp. 2-8. Pounds had no criminal history. ECF Doc. 26, Ex. A. He never received any disciplinary action during his tenure at Enterprise. *Id.* Pounds's Enterprise co-workers said he was personable and had a strong work ethic. ECF Docs. 26, Ex. C, pp. 75, 91; Ex. D, pp. 88-90; Ex. E, pp. 131-133. They could not name any instances where Pounds violated company regulations, acted improperly, or discredited the company. ECF Docs. 26, Ex. C, pp. 75, 91; Ex. D, pp. 88-90; Ex. E, pp. 131-133.

Pounds was in a romantic relationship with the plaintiff's daughter, Ms. Williams, for approximately four years. ECF Doc. 26, Ex. B, p. 2. In October 2018, Pounds and Ms. Williams's relationship deteriorated, and they exchanged accusations of physical violence and stalking. ECF Doc. 26, Ex. B, pp. 2-3; Ex. H. The plaintiff alleges that Pounds rented cars from Enterprise with his employee discount, and then he used those rental cars to follow Ms. Williams on several occasions in October 2018 and January 2019. ECF Doc. 20, p. 5.

The parties disagree whether Pounds's behavior was stalking, how many stalking incidents Enterprise received notice of, and the specificity of those notifications. ECF Docs. 26, pp. 3-5; 28, pp. 1-3. The plaintiff alleges that prior to February 11, 2019, Enterprise received detailed information of six incidents where Pounds used Enterprise rental cars to stalk, chase, harass, and intimidate Ms. Williams. ECF Doc. 20, pp. 5-7. Enterprise argues that only two of

2

these incidents were "arguably known to Enterprise." ECF Doc. 26, p. 6. Enterprise never disciplined or restricted Pounds from using Enterprise rental cars. ECF Doc. 20, p. 6.

On October 5, 2018, Pounds and Ms. Williams ended their romantic relationship, but they continued to communicate and see each other to facilitate custody of their young son. ECF Docs. 26, Ex. F, pp. 12, 40; Ex. G, pp. 207-09. On October 29, 2018, Pounds sought a civil protection order against Ms. Williams, alleging that she hit him. ECF Docs. 26, Ex. B, p. 3; Ex. H. Ms. Williams did not file for or obtain a protection order against Pounds. ECF Doc. 26, Ex. B. Law enforcement did not arrest or charge Pounds with any crime prior to his death, let alone one connected to Ms. Williams. *Id.*

In February 2019, Ms. Williams was a student at The Ohio State University (OSU) and attended classes at the Mansfield campus. ECF Doc. 20, p. 4. On February 11, 2019, Pounds was still an Enterprise employee, but he had the day off. ECF Doc. 26, Ex. J. Pounds used three different cars in the course of kidnapping and killing Ms. Williams. ECF Doc. 20, pp. 7-8. He first used an Enterprise rental car to drive to the OSU Mansfield campus, where he forced Ms. Williams at gun point into the car. *Id.* He then drove to the Enterprise store. *Id.* At the Enterprise store, he forced Ms. Williams out of the rental car and into his own personal car. *Id.* at 8. Then he drove to his apartment, stole his roommate's rental car at gun point, forced Ms. Williams into the car, and drove off. *Id.* At some point during the drive, Pounds shot and killed Ms. Williams. Pounds later died in a shootout with police. *Id.*

Procedural History

On February 4, 2021, the plaintiff filed a two-count complaint against the defendants in the Richland County Court of Common Pleas. ECF Doc. 1-1. On March 11, 2021, Enterprise removed this action on diversity grounds to the U.S. District Court for the Northern District of

Ohio. ECF Doc. 1. One week later, Enterprise filed a motion to dismiss and, alternatively, requested a more definite statement and clearer complaint from the plaintiff. ECF Doc. 4. The Court denied Enterprise's motion to dismiss but instructed the plaintiff to amend her complaint. Minutes of Proceeding, May 24, 2021. One month later, the plaintiff filed her first amended complaint. ECF Doc. 10. On July 8, 2021, Enterprise filed a second motion to dismiss, which the Court later denied. ECF Docs. 11, 14. On November 29, 2021, the plaintiff filed a second amended complaint. ECF Doc. 20. On July 13, 2022, Enterprise filed a motion for summary judgement. ECF Docs. 25, 26. On August 26, 2022, the plaintiff filed a response in opposition. ECF Doc. 28. One month later, Enterprise filed a reply. ECF Doc. 32. On October 5 and October 12, 2022, the plaintiff filed a summary of surresponse and a surresponse to Enterprise's reply brief, asking the Court to fully consider all evidence submitted in the plaintiff's response brief. ECF Docs. 33, 33-1, 34. The Court has considered all relevant exhibits in both parties' briefs.

The plaintiff alleges seven counts: negligent supervision and retention (Count I); negligence (Count II); negligent training of employees (Count III); negligent entrustment (Count IV); negligent infliction of emotional distress (Count V); vicarious liability (Count VI); and wrongful death and survival (Count VII). ECF Doc. 20.

## Standard of Review

A district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). To obtain summary judgment, the moving party bears the burden to meet this standard. *Rafferty v. Trumbull County.*, 915 F.3d 1087, 1093 (6th Cir. 2019).

4

Summary judgment is inappropriate if there are genuine disputes of material fact—i.e., the parties dispute any fact that has the potential to affect the outcome of the case under the governing substantive law. *Baynes v. Cleland*, 799 F.3d 600, 606-07 (6th Cir. 2015).

When determining whether a genuine dispute of material fact exists, a district court must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Wright v. City of Euclid, Ohio*, 962 F.3d 852, 864 (6th Cir. 2020) (quoting *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2018)). The reviewing court may neither weigh the parties' evidence nor resolve any factual disputes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's review is limited to determining whether there is evidence that could lead a reasonable jury to return a verdict in favor of the non-moving party. *Doe v. Metropolitan Gov't of Nashville & Davidson County Tenn.*, 35 F.4th 459, 463 (6th Cir. 2022) (citing *Anderson*, 477 U.S. at 248).

## Analysis

Enterprise makes four arguments seeking summary judgment on all counts. First, it asserts that Pounds's intentional acts were not in the scope of employment and not done in furtherance of a legitimate business purpose. ECF Doc. 26, p. 6. Second, Enterprise argues that Pounds's criminal acts of kidnapping and killing Ms. Williams were unforeseeable to them. ECF Doc. 26, p. 2. Third, it contends that Pounds's conduct was an intervening and superseding event, and Enterprise is not the actual or proximate cause of the plaintiff's injuries. ECF Doc. 26, p. 15-18. Fourth, Enterprise asserts that the plaintiff cannot meet the essential elements of Count IV, negligent entrustment, or the underlying substantive claims of Count VII, wrongful death and survivorship. ECF Doc. 26, p. 19-21.

The plaintiff argues that summary judgment is inappropriate on any count because there are disputed issues of material fact regarding (1) Enterprise's legal duty to Ms. Williams, (2) the foreseeability of Ms. Williams's kidnapping and death, (3) causation, and (4) the elements of negligent entrustment.  ECF Doc. 28, pp. 3, 13, 16, 18.

Vicarious Liability

The law does not normally impose liability on employers for an employee's off-duty, criminal acts that do not further any legitimate employer interest.  The plaintiff advances numerous claims and theories in an effort to avoid this bedrock legal principle and the undisputed facts in this case.  But none have sufficient evidence that could lead a reasonable jury to find for the plaintiff.

In Count VI, the plaintiff alleges that Enterprise is vicariously liable for Pounds's kidnapping and killing of Ms. Williams.  ECF Doc. 20, p. 20.  The plaintiff argues that Enterprise "ratifie[d]" Pounds's violent acts or benefited from them because Pounds was "facilitating" Enterprise's business.  *Id.*  The plaintiff also contends that Enterprise is vicariously liable for the occasions that Pounds stalked Ms. Williams "in the course of transporting or renting [Enterprise] vehicles."  *Id.*

"The respondeat superior doctrine makes an employer or principal vicariously liable for the torts of its employees or agents."  *Auer v. Paliath*, 2014-Ohio-3632, ¶ 13, 140 Ohio St. 3d 276, 278, 17 N.E.3d 561, 564 (citation omitted).  Under this doctrine, "the tort of the employee must be committed within the scope of employment."  *Id.* (quoting *Byrd v. Faber*, 57 Ohio St. 3d 56, 58, 565 N.E.2d 584, 587 (1991)).  "Generally, if the employee tortfeasor acts intentionally and willfully for his own personal purposes, the employer is not responsible, even if the acts are

6

committed while the employee is on duty." *Browning v. Ohio State Highway Patrol*, 2003-Ohio-1108, ¶ 60, 151 Ohio App. 3d 798, 810, 786 N.E.2d 94, 103 (citations omitted).

There are few exceptions to the general rule that intentional torts fall outside the scope of employment. One exception is if the employee's conduct was "calculated to facilitate or promote the business for which the [employee] was employed." *Byrd*, 57 Ohio St. 3d at 58 (citations omitted) (explaining that an employer may be liable where an employee removed and injured unruly bar patrons because their removal was "calculated to facilitate the peaceful and lawful operation of the business"). However, "an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Id.* at 59.

A second exception to the general rule is if an employer "fail[s] to take appropriate action where that employer knows or has reason to know that one of its employees poses an unreasonable risk to other employees." *Kerans v. Porter Paint Co.*, 61 Ohio St.3d 486, 491, 575 N.E.2d 428, 432 (1991).

A third exception is if an employer "specifically and explicitly ratifies the employee's [tortious] act and adopts it as the employer's own." *Deir v. Lake Cty.*, No. 1:12 CV 110, 2012 U.S. Dist. LEXIS 47393, at *10 (N.D. Ohio Apr. 4, 2012) (citing *Byrd*, 57 Ohio St. 3d at 58.). However, "[t]he mere failure to terminate the employee for the tortious act does not constitute ratification." *Id.* (citing *Amato v. Heinika Ltd.*, 2005-Ohio-189, ¶ 15 (Ct. App.)).

Pounds's tortious conduct does not satisfy any exception. As a threshold matter, on February 11, 2019, Pounds was still an Enterprise employee, but he was not working that day. The plaintiff's second amended complaint, response brief, summary of surresponse, and surresponse brief all fail to address this critical fact. ECF Docs. 20, 28, 33-1, 34.

7

First, Pounds's conduct nether facilitated nor promoted Enterprise's business. The plaintiff's argument that Pounds's actions furthered Enterprise's business of renting cars betrays all logic. His stalking, kidnapping, and violent killing of Ms. Williams did not make Enterprise more money or entice new customers; if anything, it did the opposite by imposing the cost of litigation and bad publicity. Second, Ms. Williams was not an Enterprise employee, and Enterprise therefore did not have a duty to provide her with a safe work environment. Third, there is no evidence whatsoever that the defendants took any action to "ratify" Pounds's conduct. Pounds acted outside the scope of employment when he stalked, kidnapped, threatened at gun point, and ultimately killed Ms. Williams. Similarly, even if Pounds was on-duty when he stalked Ms. Williams in October 2018 and January 2019, he acted "intentionally and willfully for his own personal purposes." *Browning*, 151 Ohio App. 3d at 810. Thus, his tortious conduct occurred outside the scope of his employment. There is insufficient evidence to convince a reasonable jury that Enterprise is vicariously liable for Pounds's criminal conduct. Therefore, the Court grants summary judgment as to Count VI.

Negligence

The plaintiff alleges six negligence claims against Enterprise for negligent supervision and retention, simple negligence, negligent training, negligent entrustment, negligent infliction of emotional distress, and wrongful death and survival. ECF Doc. 20. The remaining counts seek to hold Enterprise directly liable for its own alleged negligence.

"[A] fundamental principle of the law of all torts is that a legal right must exist and that this right must be violated in order to warrant redress." *Strock v. Pressnell*, 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1243 (1988). In negligence actions, "one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained

of, a failure to observe such duty, and an injury resulting proximately therefrom." *Id.* at 216 (citation omitted).

All of the plaintiff's negligence claims require the same common elements: (1) that Enterprise had a duty to Ms. Williams, (2) that Enterprise breached that duty, and (3) that Ms. Williams's death proximately resulted from Enterprise's breach of its duty. *Snay v. Burr*, 2021-Ohio-4113, ¶ 13, 167 Ohio St. 3d 123, 126, 189 N.E.3d 758, 762 (citations omitted). For the following reasons, the plaintiff fails to establish that Enterprise owed a duty to Ms. Williams. And even if the Court were to assume Enterprise owed Ms. Williams a duty and breached it, that theoretical breach did not proximately cause Ms. Williams's death. The Court's analysis of duty and causation applies to Counts I, II, III, IV, V, and VII.

### Duty

"Liability for negligence arises from an injury caused by a defendant's failure to discharge a duty owed to the injured plaintiff." *Snay*, 167 Ohio St. 3d at 126 (citation omitted). "[A] defendant's duty to a plaintiff depends upon the relationship between the parties and the foreseeability of injury to someone in the plaintiff's position." *Id*. 126 (citation omitted).

But duty and foreseeability are separate things. "A duty arises by law, and requires more than just foreseeability." *Estate of Ciotto v. Hinkle*, 2019-Ohio-3809, ¶ 16, 145 N.E.3d 1013, 1019 (Ct. App.) (citing *Simpson v. Big Bear Stores Co.*, 1995-Ohio-203, 73 Ohio St. 3d 130, 134, 652 N.E.2d 702, 705). A defendant owes a duty if the plaintiff's interests "are entitled to legal protection against the defendant's conduct." *Id.* (citation omitted). Foreseeability defines "the scope and extent of the duty." *Id.* (citation omitted). An employer's duty arises only in specific circumstances. It "may be established [by] common law, by legislative enactment, or by

9

the particular circumstances of a given case." *Estate of Ciotto*, 145 N.E.3d at 1020 (quoting *Wallace v. Ohio DOC*, 2002-Ohio-4210, ¶ 23, 96 Ohio St. 3d 266, 274, 773 N.E.2d 1018, 1026).

First, under Ohio common law, an employer generally has a duty to its employees. *Diemer v. Minute Men, Inc.*, 2018-Ohio-1290, ¶ 18, 110 N.E.3d 152, 158 (Ct. App.) ("An employment relationship often constitutes a special relationship that gives rise to a duty of care.") (citation omitted). Second, an employer generally has a duty to its invitees and customers. *Simpson*, 73 Ohio St.3d at 135 ("[A] business owner has a duty to warn or protect its business invitees."). Third, an employer generally has a duty to those with whom it has a financial, contractual, or fiduciary relationship. *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 767 (N.D. Ohio 2013) (citation omitted) (Under Ohio law, "each contract contains a common law duty to perform the contract with care, skill, reasonable expedience and faithfulness."); *Strock*, 38 Ohio St. 3d at 216 (citation omitted) (A fiduciary is "a person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking.").

The plaintiff's negligence claims fail because she does not identify a relevant duty that Enterprise owed Ms. Williams. In her complaint, the plaintiff appears to characterize Enterprise's duty to Ms. Williams as the duty to "not endanger members of the public." ECF Doc. 20, pp. 17, 18. She asserts that Enterprise had a "special relationship" with Pounds, which "created a duty to deny Pounds the rental he used to stalk, abduct, and murder [Ms. Williams]." ECF Doc. 20, p. 15. In her response brief, the plaintiff asserts that Enterprise had a "duty to protect" Ms. Williams, but she does not say from where that duty arises. ECF Doc. 28, p. 6.

Ms. Williams was not Enterprise's employee, customer, or invitee—but rather a member of the general public. Similarly, Enterprise never had any type of financial, contractual, or

10

fiduciary relationship with Ms. Williams. The only nexus between Enterprise and Ms. Williams was their mutual relationship with Pounds; Ms. Williams was Pounds's estranged partner and the mother of his child, while Enterprise was his employer. Enterprise did not owe Ms. Williams a duty arising from Ohio common law, state or federal legislation, or from the circumstances of this case.

Causation

Even if Enterprise owed Ms. Williams a duty and Enterprise breached that duty, the plaintiff's six negligence claims still fail because Enterprise's theoretical breach was not the direct or proximate cause of Ms. Williams's emotional distress and death.

"Causation is established using the 'but for' test." *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 12, 157 Ohio St. 3d 512, 516, 138 N.E.3d 1121, 1126 (citation omitted). "A defendant's conduct is the cause of the harm if the harm would not have occurred but for the defendant's act or failure to act." *Id*.

An injury is not the proximate result of negligence if the casual connection between the two "has been broken by an intervening cause which was not reasonably foreseeable by the [negligent party]." *Mudrich v. Std. Oil Co.*, 153 Ohio St. 31, 37, 90 N.E.2d 859, 863 (1950). "Whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence." *Id*. at 39. Finally, "[a]n injury is foreseeable if a reasonably prudent person under the same or similar circumstances as the defendant should have known that the conduct in question was likely to result in injury to the plaintiff or to someone in a like situation." *Snay*, 167 Ohio St. 3d at 126 (citation omitted).

First, Enterprise's alleged negligence in supervising and retaining Pounds and not revoking his rental car privileges did not cause Pounds to kidnap Ms. Williams at gunpoint, steal his roommate's rental car, and kill Ms. Williams. Even if Enterprise had disciplined Pounds, revoked his rental car privileges, and even fired him, Pounds would still have had the motive and financial means to do what he did. Suspending Pounds's rental car discount would not have deterred him from murdering his estranged partner given his emotionally distraught state. The fact that Pounds used three cars—an Enterprise rental car, his personal car, and his roommate's rental car—in the course of kidnapping Ms. Williams demonstrates the extreme lengths he was willing to take. Even if Pounds no longer worked at Enterprise, he would still have had access to his personal car, his roommate's car, and any other cars he rented or stole. More importantly, Pounds's employment at Enterprise was inconsequential compared to his continued gun ownership, which was the instrument that directly caused Ms. Williams's death. Enterprise had nothing to do with Ms. Williams's killing, and therefore, it was not the direct cause of Ms. Williams's death.

Second, Enterprise's actions were reasonable and justified in light of the unforeseeable nature of Pounds's conduct. In October 2018 and January 2019, Enterprise had no reason to believe Ms. Williams's stalking allegations. Beginning in June 2017, Enterprise employees and management worked face-to-face with Pounds. ECF Doc. 28, Ex. 25, p. 2. They personally talked with him, observed his demeanor and customer interactions, and supervised him. They knew about his difficult break-up with Ms. Williams and their contentious child custody dispute. *Id.* at 3. They had first-hand, direct knowledge of who Pounds was as a person. Pounds's colleagues and boss lauded his professionalism, work ethic, and positive attitude. He was never

12

subject to any disciplinary action while working at Enterprise. By all accounts, Pounds was a likeable and good employee.

Consequently, on October 27, 2018, when Ms. Williams and her sister came to the Enterprise store and told management that Pounds was stalking, harassing, and frightening Ms. Williams, the assistant manager did not jump to any conclusions. He weighed Ms. Williams's allegations against his personal knowledge of Pounds. The lack of a written police complaint, police report, or judicially-ordered protective order further underscores the reasonableness of Enterprise's response to Ms. Williams's accusations.

Similarly, on January 7, 2019, when Police Officer Hoffer relayed Ms. Williams's accusations of Pounds's stalking conduct, the defendants acted reasonably. Without an official police report, corroborating investigative materials, an arrest warrant, or protective order, Officer Hoffer's report was no more substantiated than Ms. Williams's previous allegations two and a half months earlier. The fact that law enforcement never arrested or charged Pounds with a crime, and that Pounds maintained his enrollment at a police academy and security guard job, reinforces the reasonableness of Enterprise's actions and the unforeseeable nature of Pounds's conduct.

Third, a reasonably prudent employer would not expect tensions between its employee and an estranged partner to abruptly escalate to the point that its employee kidnaps the partner at gunpoint and kills her. Pounds did not exhibit red flags observable to his Enterprise colleagues. Additionally, during November and December 2018, there were no new reports of stalking. Overall, the prior instances of stalking—when considered together with Pounds's commendable work performance, peaceful nature, employment as a security guard, enrollment at a police academy, and the absence of any arrests, protection orders, or criminal history—are not

sufficient for a reasonable jury to conclude that Pounds's criminal conduct was foreseeable to Enterprise. *Compare Diemer*, 110 N.E.3d at 160 (holding that an adjudicated sexual predator with a history of raping women posed a foreseeable harm to a subordinate female employee), *with Wagoner v. United Dairy Farmers*, APPEAL NO. C-990767, 2000 Ohio App. LEXIS 5320, at *6 (Ct. App. Nov. 17, 2000) (an employee's misconduct was not foreseeable because of his exemplary employment record and no prior history of similar "criminal, tortious, or dangerous conduct").

Therefore, even if Enterprise owed Ms. Williams a duty and breached that duty, Pounds's unforeseeable violent conduct interrupted any casual chain connecting Enterprise's theoretical breach to Ms. Williams's injuries. Because Counts I, II, III, IV, V, and VII are predicated on Enterprise owing a duty to Ms. Williams and Enterprise's negligence being the direct and proximate cause of her death, there is insufficient evidence for a reasonable jury to find for the plaintiff on these negligence claims. Therefore, the Court grants summary judgment as to Counts I, II, III, IV, V, and VII.

## Conclusion

The defendants' motion for summary judgement is GRANTED.

IT IS SO ORDERED.

Date: October 17, 2022

                                          */s/ Dan Aaron Polster*
                                          Dan Aaron Polster
                                          United States District Judge